635 So.2d 74 (1994)
STATE of Florida, DEPARTMENT OF TRANSPORTATION, Appellant,
v.
SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY, INC., a Florida Corporation, Appellee.
Nos. 92-2291, 92-2292.
District Court of Appeal of Florida, First District.
January 18, 1994.
*75 Thornton J. Williams, General Counsel and Thomas F. Capshew, Asst. General Counsel, Florida Dept. of Transp., Tallahassee, for appellant.
Robert Beatty, BellSouth Telecommunications, Inc., Miami, John P. Fons and Emily S. Waugh of Ausley, McMullen, McGehee, Carothers & Proctor, Tallahassee, for appellee.

ON MOTION FOR REHEARING AND/OR CLARIFICATION
ERVIN, Judge.
The Department of Transportation (DOT) appeals the entry of summary judgment against it on its third-party claims against Southern Bell Telephone and Telegraph Company (Bell) seeking damages for (1) breach of contract, (2) common law indemnity, *76 (3) contractual indemnity, and (4) misrepresentation. Because we conclude that genuine issues of material fact exist as to each claim, we reverse and remand for further proceedings.
In 1972, Bell and DOT entered into a contract styled "Utility Relocation Master Agreement," outlining the general terms for the relocation of Bell's utility facilities situated in DOT's right-of-ways during future construction projects. In regard to any anticipated highway project, DOT executes a change order with Bell, including a relocation schedule, enforcing the terms of the master agreement for the particular undertaking.
This appeal involves the construction of an intercoastal waterway bridge and ancillary road in New Smyrna Beach, Florida. Before the letting of bids for construction, DOT approved a relocation schedule on March 2, 1988, allowing Bell 120 days before the contractor's commencement of work thereon and 240 days thereafter in which to complete its relocation. Following the publication of the bids, Misener Marine Construction, Inc. (Misener), was awarded the contract for the construction of the bridge.[1] Shortly after Misener began work in January 1989, a dispute arose between Bell and Misener regarding the relocation of Bell's facilities and Misener's pile-driving plans. Bell informed Misener that pile driving could not be begun in a particular area of construction because its utilities were present in or near the pile-driving site.
Misener ultimately filed an action for damages against DOT, specifically alleging that the untimely relocation of certain undisclosed utility facilities by either Bell or DOT caused Misener to be delayed. (Misener alleged that although it completed construction of the bridge project within the 640 days required under its contract, it failed to complete the first phase of construction within the time specified.) In addition to filing an answer to Misener's complaint, DOT served a four-count, third-party complaint on Bell.
Following extensive discovery, Bell filed a motion for summary judgment on DOT's third-party complaint, and DOT filed a motion for summary judgment as to Misener's complaint. After a hearing on both motions, the trial court entered final summary judgment in favor of Bell against DOT, and an order denying DOT's motion for summary judgment against Misener. This appeal involves only the final summary judgment in favor of Bell, and the remainder of the opinion is divided into four parts, involving a discussion of each of DOT's third-party claims against Bell.

1. BREACH OF CONTRACT.
In regard to this theory of relief, DOT alleged in Count I of its third-party complaint that Bell had breached its contract by causing delays to Misener and by failing to defend against Misener's legal claim. DOT relies primarily upon the following provisions of the Utility Relocation Master Agreement to support its claims:
The COMPANY [Bell] further agrees that said adjustment, changes or relocation of facilities will be made by the COMPANY with sufficient promptness so as to cause no delay to the DEPARTMENT or its contractor in the prosecution of such construction or relocation work; provided, however, that the COMPANY shall not be responsible for delay beyond its control; and that such "Relocation Work" will be done under the direction of the DEPARTMENT'S engineer; and the COMPANY further agrees that in the event the changes, adjustments or relocation of such facilities or utilities are done simultaneously with the construction project, that it will be directly responsible for the handling of any legal claims that the contractor may initiate due to delays caused by COMPANY'S negligence; and that the COMPANY will not either proceed with the "Relocation Work" with its own forces or advertise or let a contract for such work until it has received the DEPARTMENT'S written authority to proceed.
(Emphasis added.)
Regarding the question of breach caused by delays arising from Bell's relocation work, *77 Bell asserted that it did not breach the contract, as evidenced by the fact that it completed the relocation of its facilities pursuant to the schedule approved by DOT, i.e., 120 days prior to the commencement of construction and 240 days thereafter. Moreover, Bell relied upon the deposition testimony of two of DOT's engineers, Richard Taylor and William Downs, admitting that they were aware of the conflict between Bell's existing utilities and the proposed construction project at the time the relocation schedules were being negotiated in 1988, and during the preconstruction conferences in late 1988. In this regard, we agree that the trial court was correct in finding a lack of genuine issue of material fact regarding whether Bell completed all of its relocation work within the period specified in the relocation schedules.
Nevertheless, Bell had a contractual duty to provide DOT with the location of all its facilities, and both Taylor and Downs testified that Bell never identified a particular fiber optic cable on the relocation plans, although the conduit containing the cable was clearly indicated. Their testimony was corroborated by Timothy Swanson, Misener's project engineer, who stated that the unknown fiber optic cable materially delayed Misener's pile-driving activities. Consequently, although Bell clearly identified the exact position of the conduit on the relocation plans, a genuine issue of material fact exists whether the presence of fiber optic cable was sufficiently identified and whether its existence caused delay to the contractor during the first phase of the construction project.[2]

2. COMMON LAW INDEMNITY.
Count II of DOT's third-party complaint alleged that DOT was without fault, and it was therefore entitled to common law indemnity against Bell for the damages alleged by Misener. Common law indemnity is a right which inures to one who discharges a duty he or she owed but which should have been discharged by another and is permitted only in situations wherein the entire fault is on the party against whom indemnity is sought. Houdaille Indus., Inc. v. Edwards, 374 So.2d 490, 492-93 (Fla. 1979). Thus, to prevail on a common law indemnity claim, a two-prong test must be satisfied. First, the indemnitee must be faultless and its liability must be solely vicarious for the wrongdoing of another. Second, in order for the faultless party to shift liability to the other, the indemnitor must be at fault. General Portland Land Dev. v. Stevens, 395 So.2d 1296, 1299 (Fla. 4th DCA 1981).
In the case at bar, a question remains as to whether DOT breached its contract with Misener, therefore, it has not yet been determined whether DOT is faultless. Moreover, as previously discussed under Part 1, a question remains as to whether Bell breached its contract with DOT, therefore, it is likewise questionable whether Bell is at fault. Under the circumstances, we consider that it would be premature to relieve Bell from indemnifying DOT, based on the theory that DOT was solely at fault. See Cox Cable Corp. v. Gulf Power Co., 591 So.2d 627, 629 (Fla. 1992) (contracts for indemnification which attempt to absolve a party from its own wrongful acts are viewed with disfavor and will be enforced only if they express such an intent in clear and unequivocal terms).

3. CONTRACTUAL INDEMNITY.
Count III of the third-party complaint sought contractual indemnity against Bell pursuant to paragraph 7 of the master agreement, which provides as follows:
The COMPANY further agrees to indemnify, defend, and save harmless and exonerate the DEPARTMENT of and from all liability, claims, and demands for contractual liability rising out of the work undertaken by the COMPANY, its employees, agents, representatives or its subcontractors due in whole, or in part, to conditions, actions, or omissions done or committed by the COMPANY; or its subcontractors, its employees, agents representatives, or its subcontractors. It is specifically understood and agreed that this indemnification agreement does not cover nor indemnify the DEPARTMENT for its own negligence or breach of this contract.
Thus, pursuant to the express terms of the master agreement, Bell had a duty both to *78 indemnify and defend DOT,[3] subject to the conditions therein stated. As for contractual indemnification, because questions remain as to whether DOT and Bell breached their contracts, like the claim for common law indemnity, summary judgment on this count is premature at this juncture.
Turning next to DOT's claim for breach of Bell's duty to defend, even if DOT was later determined to be solely liable to Misener on its claim for damages, and had no right to indemnification from Bell, Bell's duty to defend is entirely separate from DOT's right to indemnification, because its duty to defend must be determined from the allegations in Misener's complaint against DOT at the time it was filed. Baron Oil Co. v. Nationwide Mut. Fire Ins. Co., 470 So.2d 810, 813 (Fla. 1st DCA 1985). In the case at bar, the trial court granted Bell's motion for summary judgment on all claims contained in DOT's complaint, primarily based upon discovery material obtained subsequent to the filing of Misener's complaint, and not because the allegations asserted therein failed to show a lack of any clear-cut duty by Bell to defend. Based on the allegations made, i.e., that Misener was delayed either through the actions of DOT or Bell, Bell had a clearly established contractual duty under the terms of the master agreement to defend DOT upon the filing of Misener's original complaint, even though it may be ultimately determined that Misener has no cause of action and that DOT was entirely free from fault.

4. MISREPRESENTATION.
Count IV of DOT's third-party complaint alleges that Bell made a material misrepresentation to DOT by failing to discover or disclose additional conduit and fiber optic telephone lines adjacent to the Lytle Avenue area of construction. The elements of a misrepresentation claim include: (1) a false statement concerning a material fact, (2) knowledge by the person making the statement that it was false, (3) intent by the person making the statement to induce another's reliance, and (4) reliance by such other person on the misrepresentation, causing injury to him or her. Lance v. Wade, 457 So.2d 1008, 1011 (Fla. 1984). Moreover, under certain circumstances, concealment or nondisclosure of a material fact may also form a basis for a claim in misrepresentation. 27 Fla.Jur.2d Fraud & Deceit § 36 (1981). And see Franklin v. Brown, 159 So.2d 893, 898 (Fla. 1st DCA 1964).
In the instant case, DOT engineer Richard Taylor testified that Bell was required under its contract with DOT to complete the relocation schedule, which would explain all the facilities that the utility had in the area and what the utility proposed to do with them, and Bell did, in fact, provide some information to DOT. Bell failed, however, to reveal a fiber optic cable located within a conduit that was shown on the relocation schedule. This nondisclosure involves a material fact, in that Misener's project engineer, Timothy Swanson, testified that the unknown fiber optic cable caused delay in the pile-driving activities. Because a genuine issue of material fact exists whether the nature of the fiber optic cable within the conduit created a relocation problem that delayed the contractor during the first phase of construction, as discussed in Part 1 of this opinion, factual questions exist as well in regard to whether the undisclosed fiber optic cable involves a material misrepresentation. Summary judgment was, therefore, inappropriate.
REVERSED and REMANDED.
JOANOS and WOLF, JJ., concur.
NOTES
[1] A copy of the relocation schedule between DOT and Bell was furnished to Misener as part of the bid package.
[2] Because the theory for breach of the duty to defend under Count I and the cause relating to DOT's claim for contractual indemnity alleged in Count III overlap, the disposition of the claim for failure to defend is discussed under Part 3, infra.
[3] See contract provision quoted in Part 1 of this opinion.